UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WEB INNOVATIONS & TECHNOLOGY SERVICES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 4:13CV507 CDP ) |
| BRIDGES TO DIGITAL EXCELLENCE, INC. & DOUGLAS CHAPMAN, | ) ) ) ) |
| Defendants. | ) ) |

# **MEMORANDUM AND ORDER**

This matter is before the court on the joint motion by defendants Bridges to Digital Excellence, Inc., and Douglas Chapman to dismiss the third count of the amended complaint of plaintiff Web Innovations and Technology Services, Inc. WITS brought claims against the defendants for breach of contract, conversion, and negligent misrepresentation. Defendants contend that Missouri's economic loss doctrine requires dismissal of the negligent misrepresentation claim. The economic loss doctrine bars purely monetary recovery in tort where that tort also constitutes breach of the contract. Because WITS alleges at least one misrepresentation that was not incorporated within the contract, dismissal is inappropriate. I will deny the defendants' motion to dismiss plaintiff's count for negligent misrepresentation.

## Background[1]

Web Innovations and Technology Services, Inc., is a non-profit organization dedicated to the goal of keeping electronic devices out of landfills. WITS collects electronics from various sources and then either sells them whole or "de-manufactures" them to sell the parts. Bridges to Digital Excellence is a non-profit organization that processes electronic materials for sale and recycling. BDE also operates an online thrift store to resell electronics. Douglas Chapman is a co-founder of BDE and served as its executive director in charge of day-to-day operations.

In April 2012, WITS and BDE entered into a Memorandum of Understanding, the ultimate goal of which was for WITS to acquire BDE. The MOU established "conditions for a final sale by sharing costs and revenue that are sufficient for BDE to fund operations and reduce debt."

The MOU set forth certain obligations for BDE[2]:

1. Collect and process a minimum of four trailers per month;
2. Process an additional four trailers of electronics for WITS (trailers sent from WITS at its expense and presorted to provide 100% high value materials).
3. Triage all BDE materials into three categories: (a) reusable by BDE, (b) low value materials (to go to WITS) and (c) high value materials to be processed for sale.

---

[1] These facts are set forth solely for ruling on this motion to dismiss, and they do not relieve any party of the burden of presenting evidence later in these proceedings.

[2] The MOU has been altered slightly to maintain consistent use of numbers and names.

4. BDE will hire and recruit staff as requested and paid for by WITS.
5. Use WITS's processes for sorting and de-manufacturing.
6. Continue, at its expense, the South Bend and Benton Harbor leases during the term of this agreement. . . .
7. Pay for shipping of BDE materials between Benton Harbor and South Bend.
8. Recover and sell all steel, aluminum, etc. recovered from all materials. BDE receives 100% of the revenue of these sales.
9. Maintain salaries at the current levels unless agreed upon by both parties.
   a. Upon date of signature, Trina Bailey's salary will increase to $32,000.
10. Maintain Doug Chapman's and Trina Bailey's employment.
11. Not contract for any capital equipment or any long term agreements unless agreed by both parties.
12. Provide regular reports of BDE debt amounts.

Doc. 19-1.

The MOU also set forth WITS's expected performance:

1. Provide four trailers to BDE for de-manufacture. (trailers sent from WITS at its expense, which will be presorted to provide 100% high value materials).
2. Pay BDE 100% of the revenue from boards and components processed by SIPI. Payment to be made within seven days of shipment. WITS has right to request cost of purchased materials (computers and other materials).
. . .
5. Pay 50% of Trina Bailey's salary for six months. Twenty hours of Bailey's time will be available for duties defined by WITS and agreed by BDE. BDE will bill WITS one month in advance for the month.
6. Agree with BDE on an efficient schedule of trailer arrival and departure each month and operate consistent with that agreement.
7. Have rights to any reusable equipment from BDE collections not retained for BDE's refurbishing and resale activities.
. . .

> 11. 100% of material (i.e. TVs, Monitors and other low value scrap) subject to the national "take back" contract in BDE warehouses currently and which they collect will be paid to BDE. WITS may ship material in to be sorted and shipped out of South Bend and these will be negotiated on a per shipment basis.

Doc. 19-1.

The MOU would remain valid for six months from the date of signing. WITS could cancel the MOU with sixty days written notice, but BDE could cancel only if its debt increased in any thirty-day period and if WITS did not take immediate corrective action. The MOU granted WITS the right to complete its acquisition of BDE "when the net short term liabilities are below $5,000 for thirty days." The parties agreed to negotiate in good faith for a final agreement to complete the acquisition. Doc. 19-1.

The parties amended the MOU on September 10, 2012. The amended MOU included an estimation of revenues and mandated that "[a]ll revenues generated and outlined for the debt are to be used to pay down debt." Doc. 19-2.

WITS alleges that while it fulfilled its own duties under the MOU, BDE failed to meet its obligations in the following ways:

> 1. BDE collected and processed only one trailer per month.
> 2. BDE failed to use WITS's processes for sorting and de-manufacturing.
> 3. BDE failed to continue the two leases during the term of the Memorandum.
> 4. BDE failed to pay to WITS the cost of purchased materials used to generate revenue from circuit boards and components processed by SIPI.

- 4 -

     5.     BDE failed to allocate 20 hours per week of Trina Bailey's time for duties defined by WITS.

The Amended Complaint also alleges that BDE used revenues to pay its own operating costs instead of paying down its debt obligation, in violation of the MOU.

WITS contends that it incurred losses and costs as a result of the failure by BDE to provide the four trailers as required under the MOU, because it had to ship additional trailers of electronics to BDE so that BDE might pay down its debts. Additionally, because BDE failed to use WITS's processes, WITS alleges that its buyers ceased paying on receipt of components and began "charging back" against payments already made. WITS also cites that failure as a reason that it lost existing and future contracts with one buyer and that it has incurred other related expenses, including payments to alternative local processors, storage fees for items unable to be shipped, and payroll deficits.

In addition to its counts for breach of contract and conversion, WITS asserts a claim for negligent misrepresentation based upon six representations made by Chapman:

    a.     BDE was currently collecting four trailers of electronics per month and would be capable of collecting and processing four trailers of electronics a month going forward.
    b.     BDE had several skilled employees who could efficiently process small high-end electronics and who were trained to identify items for reuse or sale on eBay.

c. BDE management and employees had the necessary experience and skill to properly sort donated items by grade.
  d. BDE was part of programs that paid between 50% and 100% of the salary for most of its employees' pay during their training periods, after which time BDE could hire the employees. This resulted in a skilled workforce.
  e. BDE had 45 to 50 special business partners in the community that collectively had produced a truckload of donations per week, and BDE had an employee working to expand the number of special business partners.
  f. Through its past collections, BDE had generated sufficient electronics such that there would be enough equipment not retained for BDE's own activities that WITS could expect to generate an additional $5000 per month.

These statements are alleged to be false in that:

  a. BDE only collected at most two trailers during special event months.
  b. BDE had no employees skilled in breaking down small electronics efficiently, and those who did that work lacked the ability to recognize and retain valuable materials and identify items for reuse or resale.
  c. BDE employees and management were not properly identifying items by grade.
  d. BDE lost one of the pay-reimbursing programs prior to execution of the Memorandum; BDE lacked a skilled workforce; the 100% reimbursing program either had limited workforce or the workers were unable to participate in production due to disability.
  e. BDE had only five to ten special business partners and no employee instructed to generate new business partners.
  f. BDE had never collected electronics such that WITS could expect to generate an additional $5000 per month.

WITS alleges the same damages in the misrepresentation and the contract claims. BDE contends that the economic loss doctrine bars WITS's count for negligent misrepresentation and moves to dismiss that count.[3]

---

[3] BDE has also moved to dismiss that count as alleged in WITS's original complaint. As that complaint has been amended, the motion will be denied as moot.

## Legal Standard

When ruling on a motion to dismiss, the Court must view the allegations in the complaint liberally, in the light most favorable to the plaintiff. *See Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (citing *Luney v. SGS Auto. Servs.*, 432 F.3d 866, 867 (8th Cir. 2005)). The Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citing *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001)). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint attacked under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Further, Rule 9(b), applicable to the negligent misrepresentation claim here, requires that circumstances constituting misrepresentations be pleaded with particularity. Fed. R. Civ. P. 9(b); *Trooien v. Mansour*, 608 F.3d 1020, 1028 n.3 (8th Cir. 2010). Thus, a party complaining of misrepresentation must allege "such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or

given up thereby." *Schaller Tel. Co. v. Golden Sky Sys., Inc.,* 298 F.3d 736, 746 (8th Cir. 2002) (citations omitted).

## Discussion

WITS claims that Chapman, in his capacity as the executive director of BDE, negligently misrepresented the ability of BDE to collect and process electronic materials. Specifically, WITS contends Chapman told it that BDE had forty-five partners that collectively donated a truckload of electronics each week; however, BDE actually had five to ten partners whose donations amounted to at most two trailers per month. WITS further claims that Chapman knew WITS would rely on these statements in deciding whether to enter the MOU, that WITS did rely on the statements, and that it would not have entered into the MOU absent Chapman's representations. BDE contends that the negligent misrepresentation claim is barred under Missouri's doctrine of economic loss.

"The economic loss doctrine bars 'recovery of purely pecuniary losses in tort where the injury results from a breach of a contractual duty.'" *Dubinsky v. Mermart, LLC*, 595 F.3d 812, 819 (8th Cir. 2010) (quoting *Zoltek Corp. v. Structural Polymer Group, Ltd.*, No. 4:08-CV-460 (CEJ), 2008 WL 4921611, at *3 (E.D. Mo. Nov. 13, 2008), *aff'd on other grounds*, 592 F.3d 893 (8th Cir. 2010)). The doctrine exists to protect the integrity of the bargaining process, through which

the parties have allocated the costs and risks.  *Marvin Lumber & Cedar Co. v. PPB Indus., Inc.*, 223 F.3d 873, 882 (8th Cir. 2000).

Some Missouri courts have recognized specific exceptions to the economic loss doctrine in cases involving a fiduciary relationship or negligence in providing professional services.  *See, e.g.*, *Bruce Martin Constr., Inc. v. CTB, Inc.*, No. 1:10CV205 SNLJ, 2012 WL 718624, at *3 (E.D. Mo. Mar. 6, 2012).  Another recognized exception applies where the defendant breached a public duty.  *Id.*; *see also Dannix Painting, LLC v. Sherwin–Williams Co.*, No. 4:12CV01640 CDP, 2012 WL 6013217, at *2 (E.D. Mo. 2012) (listing authority).  Missouri courts have not yet addressed the application of the economic loss doctrine to fraud claims.  *Trademark Med., LLC v. Birchwood Labs., Inc.*, No. 4:12-CV-1890 JAR, 2014 WL 2154147, at *3 (E.D. Mo. May 22, 2014).  Still, in certain circumstances the Eighth Circuit has held that a claim for fraud may be brought alongside a contractual claim:  "A fraud claim independent of the contract is actionable, but it must be based upon a misrepresentation that was outside of or collateral to the contract, such as many claims of fraudulent inducement."  *AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th Cir. 1998) (citing *inter alia Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19–20 (2d Cir. 1996).

There are two critical factors in examining whether a fraud claim is independent of a contract claim under the economic loss doctrine. The first is whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract. *See AKA Distrib.*, 137 F.3d at 1087 (holding misrepresentations concerning "a term of the contract" to be inactionable). The second factor looks to whether the plaintiff suffered additional damages outside the contract because of the alleged fraud. *See Bridgestone/Firestone*, 98 F.3d at 20 (to be actionable a fraud claim must "seek special damages that are caused by the misrepresentation and unrecoverable as contract damages")). The amended complaint does not set forth any special damages attributable solely to the alleged misrepresentation, and so I will only analyze the first factor.

BDE believes that this case is similar to one recently heard in this District, in which a claim based on a pre-contract misrepresentation about the ability to perform was held barred under the doctrine of economic loss: *Compass Bank v. Eager Rd. Assocs., LLC*, 922 F. Supp. 818 (E.D. Mo. 2013).

In *Compass Bank*, the parties had been involved in the protracted litigation of a real-estate deal gone sour and entered a settlement agreement and mutual release designed to both settle that dispute as well as to resolve the property's financing. *Id.* at 821. The contract set forth two conditions precedent: a $4.15 million "Developer Settlement Payment" and a "Developer Letter of Credit" for

$1.35 million.  *Id.*  Ultimately, the defendants failed to pay or produce the letter of credit, and the plaintiff sued for breach of the contract.  *Id.*  The plaintiff also alleged that defendants intentionally misrepresented their ability to perform and fraudulently induced the plaintiff into accepting the settlement.  *Id.*  The court found that the alleged misrepresentations – that defendants had $4.15 million in cash and could obtain a line of credit for $1.35 million – "correspond precisely with the terms of the contract" alleged to be breached, and it dismissed the fraudulent inducement claim under the economic loss doctrine.  *Id.* at 826–28.

Here, the alleged misrepresentations lack the precise nexus to the contract that was found in *Compass Bank*.  The misrepresentations alleged go to BDE's ability to perform its obligations under the contract, but the subjects of at least some of the misrepresentations, including the quantity of BDE's partners, are not contractual terms.  This case is more akin to *Superior Edge v. Monsanto*, a case published following the close of briefing on this issue.  *Superior Edge, Inc. v. Monsanto Co.*, No. 12–2672 (JRT/FLN), 2014 WL 4414764 (D. Minn. Sept. 8, 2014) (applying Missouri law).

The case in *Superior Edge* stemmed from a software and licensing agreement entered between Superior Edge and Monsanto after the former represented that it had the engineers, infrastructure, and experience to develop the software.  *Id.* at *1.  Superior Edge failed to deliver the software, and Monsanto

- 11 -

sued for breach of contract and fraudulent and negligent inducement, amongst other claims. *Id.* at *3. The *Superior Edge* court applied the two-factor test and held that the misrepresentation claims were not barred under Missouri's economic loss doctrine. *Id.* (noting that the misrepresentations prevented Monsanto from being able to negotiate terms "to protect itself from commercial risk"). The court distinguished *Compass Bank* because the representations as to Superior Edge's "ability to perform" were not memorialized in the contract. *Id.* at *11.

BDE is alleged to have misrepresented the number of its business partners and their past donation rates. These representations go to its ability to provide the required number of trailers of electronics on a consistent basis, but the contract never explicitly required BDE to maintain any number of business partners. As such, it cannot be said that that the parties' negotiations fairly accounted for the misrepresentation, and a claim based on the misrepresentation is not barred by Missouri's economic loss doctrine. *Cf. Marvin Lumber*, 223 F.3d at 882 ("The doctrine . . . prevents tort law from altering the allocation of costs and risks negotiated by the parties.") *and AKA Distrib.*, 137 F.3d at 1087 ("A fraud claim independent of the contract is actionable . . . .").

Accepting the presented facts as true and construing all inferences in WITS's favor, WITS has stated a plausible claim for relief under a theory of negligent misrepresentation. There may be other claims based on

misrepresentations that are contained in or contradicted by the MOU. Parsing which misrepresentations will fail under the doctrine of economic loss is a task best undertaken after discovery. *See Monsanto*, 2014 WL 4414764, at *12.

It should also be noted that WITS reincorporated the same damages allegations for both its breach of contract and negligent misrepresentation counts. Missouri law does not allow for a double recovery on these claims. *See Kincaid Enters., Inc. v. Porter*, 812 S.W.2d 892, 900 (Mo. Ct. App. 1991) (noting that breach of contract and fraudulent inducement are not inconsistent actions, but that their damages may overlap to the disservice of justice). The complaint does not clearly delineate which forms or amounts of damages are independent and which overlap. I will allow this claim to proceed, but WITS should keep in mind its evidentiary burdens going forward.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss Count III of plaintiff's Amended Complaint [# 22] is **denied**.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss Count III of plaintiff's original Complaint [# 11] is **denied as moot**.

*/s/ Catherine D. Perry*
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 19th day of November, 2014.